and I'll ask Case for Argument. Case number 2, excuse me, Case number 23-1496 from the Western District of Missouri, Antonio Webb v Lori Lakey et al. Case number 23-1496 from the Western District of Missouri, Antonio Webb v Lori Lakey et al. Good morning, Your Honors. May it please the Court. You better speak up. Good morning, Your Honors. May it please the Court. Thank you. My name is Brian Pratt and I, along with my colleague Sarah Jones, represent Antonio Webb in this case and the appeal. I recognize the Court hears a lot of Section 1983 cases, but this one's unique and it's a little bit different than what you heard before because the Attorney General's Office, representing the guards in this case, made a strategic litigation decision. A strategic litigation decision to not raise the qualified immunity claim and to expressly waive the qualified immunity claim. That's the issue. Yes, Your Honor. I think the Spann case makes it clear it wasn't waived for any purpose other than a summary judgment. Spann is different than this case because in Spann, Your Honor, the Court held that the government's inaction or not doing something waived qualified immunity for purposes of summary judgment, but also, though, not for trial, Your Honor. This case is different. But it didn't address whether the judge could solicit the motion. That's correct. That's what happened here. That's correct. That's correct. But I was referring to the last sentence. We remain for further consideration of the official's defense of qualified immunity. And in that case, that's pretty similar to most of the... So that's what we couldn't do any more than that here. Well, here, this case is different. I'll tell you why. You're right, Your Honor, because in most of the qualified immunity waiver cases, it addresses some inaction by the government agency to not push forward with the qualified immunity claim. Here, this case is different. In this case, it's different, and here's why. The district court issued an order in this case, and here's what the order said. If defendants intend to assert qualified immunity in this case, they shall do so in a motion on or before April 19th of 2022. So here, that's why this case is different than Spann, because here, the district court said specifically, if you're going to erase the issue, period, not just in pretrial, but in the case... Wait a minute, that would have been reversible error if it had been followed literally. Well, that's what I'm asking the court to do right now, is I'm saying that here, this is different than Spann, because in Spann, they just didn't do anything on their own. Here, the court said, I'm going to order you. If you're going to pursue a qualified immunity claim, you're under order to do so by a certain date, and the guards selected not to do it. Okay, but a district judge can always reconsider that kind of a ruling at that stage of the case. You can't get this case reversed because of in this case. What you're asking, Judge, is... I'm only speaking for myself, but that doesn't fly. I understand. I think what you're asking is, if the court says, counsel, if you're going to raise it, you have to raise it by X date, and I think what you're saying, Judge Logan, is that, hey, later on, can a judge say, hey, I know you didn't do it here, but we may allow you to resurrect the claim. I get that. But here, here's what happened in this case, and here's why this case is different. At the pretrial conference, after the guards didn't file the motion on April 22nd, at the pretrial conference, the judge brought up qualified immunity, just as you suggested, Judge Logan, and said, and the guards said, quote, based on the way the amended complaint was filed, I didn't see grounds to file a summary judgment at the time. The district court said, okay, or a motion to dismiss related to qualified immunity. The guard responded. The guards' counsel responded, no, I didn't see grounds for a motion to dismiss on failure to say the claim for qualified immunity or any of the Sovereign or Eleventh Amendment protections. So didn't see grounds to move for dismiss or move for summary judgment. That's true in a lot of cases. That's right, Your Honor. Johnson v. Jones. You're exactly right. But here's what happened after that. Didn't they then file the motion in August, though? Well, yes, yes, but let me, after the pretrial conference, everyone's getting ready for trial. And from the moment of the pretrial conference, that was July 7th of 2022, up to the four days before trial, nothing happened. There wasn't a single factual thing that changed anything whatsoever. No new factual issue came into the case. And then on the Thursday before the Monday trial, the district court entered an order at that point saying, ordering. But isn't that kind of trial management, case management? So he knows that the defendants are going to raise it at the trial. And I think the order said, like, I know this is coming, and under the rules, I can ask for a motion on it, and I think it's going to be confusing for the jury. Actually, I think the district court said it would be confusing for your client. You know, against you, your client, if we wait until trial. Why is that problematic? I think, Judge Kelley, I think at that moment, when that ruling was made by the district court to say, ordering the guards to file their motion for summary judgment on qualified immunity, by that time it was waived. And the Judge Lopin's answer, too late for it to be resurrected. So you can waive the right to, I understand waiving a defense, but your position is that you can waive, I guess I'll use the word, the right to file a summary judgment motion? That's an independent thing that you can waive? I'm asking the court to find that you can waive qualified immunity when the court specifically says, hey, if you're going to raise it in this case, you have to do so by a deadline. And then after that, confirm it at the pretrial conference. But at the pretrial conference, they say we're going to present it at trial. So what you're saying is that they couldn't have even presented it at trial based on your waiver theory. I said that, my point is the guards made a litigation strategy decision. And we may think that was a good decision, or like the district court, we may think it was a bad decision. You're appealing what the district court did. Right. And you're saying it's waivered somehow before the district court did what I consider to be a very sound exercise of trial management and case management by the party who's in the courtroom that knows the most about qualified immunity. I understand that. And prior to that, your honor, the guards made a litigation strategy decision. And obviously the district judge in that case. The district court disagrees with that. The district court clearly disagrees with the litigation. But they ought to be allowed to make a litigation strategy decision. The guards ought to be able to say, hey, we're not going to raise it. And we're going to tell you repeatedly, court, we're not going to raise it. I understand that. And I think the district courts ought to. Where do I go on the record for the colloquy about that after the district court said file your motion? Well, after the district court filed their motion, the guards. Your honor, district court, in the order that you say is the reversible error, the district court ordered them to file a motion. Now, where is the colloquy and where is it raised to the district court? You can't do that. They've already waived it. In our briefing on the motion for summary judgment, we clearly told the district court that they'd waived it. Who? In the briefing on the motion for summary judgment, the guards ultimately filed the motion. When they did what the court urged them to do. Yes, and they did. And where is the district court's response to that argument? In the order granted in the motion for summary judgment. In the order granted in the motion for summary judgment, the court took up the issue because we brought up the Antonio Webb brought up waiver. And we said it's been waived. And the court addressed that issue specifically in the order granted in the motion for summary judgment. Excuse me. Does your waiver point, does it extend to the trial? Your Honor, I say it extends to the trial based on what the judge said. The judge can't deprive them of the right to waive it at trial, can he, by ordering them to file it earlier? You're not. What the guards did, they made a litigation decision repeatedly. They told the court. The court said, hey, file your motion. If you're going to bring in the case, file your motion. But nothing changed on that, Judge Caldwell. If there was some change of facts between that, we may understand that you can resurrect and bring back a claim that you once waived. But not even the guards are saying that. They're just saying from a timing perspective, we didn't do it here. We violated the court order. And I say we ought to respect their decision. And I don't know if it was a strategic litigation decision. I think it was that I thought ought to be respected. And when the court held a pretrial conference, the guards said unequivocally, the guards lawyers said unequivocally, we don't see grounds for it. And maybe that's why they made a litigation decision. The court says the defense is not waived at this stage of the litigation and could even be reasserted later if not now. That's clearly correct. That's what the judge found. Except for you're seizing upon in this case. I'm asking the court to say that the reason the guards filed their motion for summary judgment is because the court said I'm ordering you to do so. Had the court not made the order ordering them to do so, we would have proceeded to trial four days later. Yeah, and then at the close of trial, they would have made the argument. Well, probably not because I think I would probably go to the judge and say, judge, you gave them a chance. And you said if you're going to bring it up in this case, you said they have to file a motion before April 19th. You're just wrong on qualified immunity law. You're just wrong. The law, your honor, is there's no law out there on either side that says when you expressly waive, when you do something to say I'm waiving it, that it shouldn't be respected. There's no law on that. Well, in Span they just didn't do anything. Here they responded directly to the court, both in the pre-trial conference and in not responding to the order. I'm sorry, your honor. Well, all right. Am I right? You have not addressed summary judgment on the merits of anything but retaliation. Yeah, the two issues put up on appeal are retaliation and the waiver of qualified immunity. Yes, your honor. So we don't have, we, so that takes care of those issues. They don't need qualified immunity. Well, except for retaliation. Right. My hope is and my ask for the court is to reamend this case back to a trial for the retaliation claims only with no qualified immunity. That's the ask. So let me switch, go quickly to the retaliation argument. In that case, I know the court's well aware of the elements. The district court focused on the second element. And the second element is that the government official took adverse action against him that would chill a person of ordinary fitness from continuing the activity. That's Santiago versus Blair. Now, here are some of the facts before the district court. After Mr. Webb filed a Prison Rape Elimination Act, PREA, complaint regarding obscene sexual comments, Guard Gilgore threatened Mr. Webb by saying, if you call PREA, I'll make sure you're sorry you're dead. Guard Woody threatened to trash his cell where he lives. Guard Gilgore threatened to send Mr. Webb to a Level 5 prison, a higher security and a more dangerous prison. Guard Lakey threatened to take away his parole. She was a deputy warden. Guard Lakey also threatened to cause all the grievances to go away. So those were just some of the facts before the district court. The guards submitted a declaration. They each submitted a declaration. And in the declaration, it said, quote, they did not retaliate against Antonio Webb. So Mr. Webb cites instances of retaliation. The guards said it didn't happen. That's the definition of a disputed fact. What evidence did Webb put on? Mr. Webb, well, Mr. Webb's deposition, the guards never did any discovery in the case. This was a declaration filed by Mr. Webb in response to the motion of summary judgment. So that's the evidence in the record. Is there a problem with the admissibility of that declaration because it was not made under penalty of perjury? Yeah, that's a great question, Judge Clark. And the Webb's declaration is the exact same as the guards' declaration, except it doesn't contain that sentence. And the district court was certainly critical of that. But lucky for me, the district court still considered the declaration notwithstanding that, notwithstanding that sentence that was missing from the declaration. It was a signed declaration by Mr. Webb. The guards' declarations were also signed, but the guards' declaration did contain that last sentence. But my question is, if Webb's declaration is insufficient, then has he failed to create the disputed fact that you're describing? Well, I would submit to you that at least the district court, while critical of the declaration fairly, still considered that declaration as part of its order on the motion for summary judgment. So I'd ask this court to also consider the same declaration, the same facts. And here, Your Honor, you've got one set of facts where the guards say one thing, Mr. Webb says another thing, all relating to that second element, which that second element represents, quote, sort of the question that is usually left to the judgment of the jury, end quote. That's Garcia versus City of Trenton. The opposing declarations on that critical element of the retaliation claim show that there was a genuine issue of material fact. And, Your Honors, as a result, Mr. Webb, we respect the request of this court to reamand this case back to the district court for trial for the retaliation claim only with no qualified immunity. I thank you, Your Honor. Mr. Lodano? May it please the court. In this case, defendants filed an answer asserting their qualified immunity to plaintiff's claims, and defendants later communicated to the district court their intention to litigate that defense at trial. The district court responded by postponing the trial, amending the case scheduling order, and directing that defendants raise qualified immunity in a summary judgment motion. Defendants did so, and the court, after adherence to Rule 56 procedures, granted the motion. The district court acted sensibly to conserve its own resources and to protect and preserve the resources and rights of the parties. The district court correctly determined that defendants did not waive their qualified immunity defense in this case, and the district court correctly went on to grant summary judgment on two independent grounds. Defendants ask that this court affirm. I'll begin today by addressing the plaintiff's argument that the defendants waived the qualified immunity defense in the litigation, and then I will turn to the district court's two grounds for summary judgment. Beginning with the issue of waiver. Defendants included qualified immunity in their answer and in their summary judgment motion below. Under this court's precedence, they preserved the defense for consideration by this court. The district court's ruling on the point is correct. The case law applicable to plaintiff's waiver argument offers him no quarter. For even if the defendants had not raised qualified immunity in a timely summary judgment motion, their defense in the litigation would not be waived. The district court addressed this point in its ruling and noted the applicable precedent, Hill v. McKinley, Lampkins v. Thompson, and Span v. Lombardi, all of which are addressed in defendant's brief. Plaintiff attempts to make much of defense counsel's statements at the pretrial conference, but those statements simply do not amount to a waiver of the qualified immunity defense. Consistent with the inclusion of qualified immunity in defendant's answer and schedule of remaining claims filed with the district court, defense counsel explained to the district court at the conference his reasoning for not filing a motion based solely on plaintiff's complaint before that time period. Once the district court issued the order saying, in this case order, if the defendants were going to raise it, maybe it would have been a good idea to file some document to alert the parties that you were still going to raise it at trial? I think that certainly would have been recommended, Your Honor. However, as pointed out in my opponent's argument, the district court retained discretion to amend any effect that the prior order would have had to amount to a waiver for the defense in question here. In other words, the later in time order governs, and the later in time order clearly directed the defendants to address the issue on a motion for summary judgment before trial. That order was appropriate. Turning to the summary judgment grounds, in this case, plaintiff failed to present a genuine dispute of material fact as to whether any count three defendant engaged in actionable retaliatory conduct against him. Furthermore, the count three defendants established on the summary judgment record their right to qualified immunity as a matter of law. I'll begin with actionable retaliatory conduct. As discussed earlier, plaintiff failed to submit any evidence on the summary judgment record that properly disputed the count three defendant's admissible presentation of facts on summary judgment. Plaintiff's summary judgment submission included three exhibits. Two of those three, as the district court noted, consist largely of his own prior complaints, which are hearsay and inadmissible. To the extent that anything in those two larger exhibits submitted by the plaintiff contains something that would have refuted the summary judgment position of the defendants, plaintiff failed to specify what that item or those items were. And the district court noted that this failure waived his right to have those matters considered by the court before summary judgment. The other exhibit mentioned, the third one, is plaintiff's unsworn statement. As noted earlier, that statement does not meet the strictures of 28 U.S.C. 1746. It is therefore also inadmissible. But even if it were considered, and even if this court went on to consider the portions of these exhibits that are cited now by plaintiff in this appeal, at most what those exhibits would establish are verbal threats made by Gilgore, Woody, and Lakey. Nothing more. As is usually the case, those threats do not qualify as actionable retaliation under this court's precedence. The district court noted as much and cited the appropriate case law in McDowell v. Jones, Martin v. Sargent, and the counterexample of Burton v. Livingston. And we cited those cases in our brief as well. Furthermore, regarding the issue of no actionable conduct. Why is the threat of retaliation not sufficient? I thought our Santiago case was cited. Santiago was cited. The plaintiff's position that it would be sufficient if the evidence is admissible. Yes, Your Honor. I believe Santiago was cited by the plaintiff. However, Santiago involves a death threat, as does Burton v. Livingston. And the district court noted that that is clearly distinguishable from the alleged facts that we have here. Again, those facts are not supported by any admissible evidence. What would be the principal reason for distinguishing between a death threat and some other kind of threat? Well, a death threat is more specific, Your Honor. A death threat is a threat of violence versus just a general threat or a vague threat, which all that we have here are vague or general threats. Again, there were allegations in the complaint regarding a level 5 prison. That the plaintiff would be sent to a level 5 prison if he didn't retract his allegations. Something to that effect. Well, I suppose the question is whether or not chilling is a fact-intensive issue. Well, I think the point I want to raise here is that a death threat is certainly different. A death threat certainly is different, Your Honor. But in the totality of whatever circumstances are at issue, is it enough to chill, whereas this isn't? No, this is not, Your Honor. And furthermore, the level 5 prison allegation is just that. It is an allegation. It is in the complaint and nowhere else on the summary judgment record. It is not part of the summary judgment record. Even if you go to look for the portions of the hearsay statements that the plaintiff has cited to this court on appeal, it's not there. It's only in the complaint. The same is true for the allegation that Defendant Lakey threatened to take away the plaintiff's parole or the opportunity for parole if he did not somehow retract or rescind or at least stop making grievances. That allegation is nowhere except in the complaint. Turning finally, Your Honor, to qualified immunity. The plaintiff failed to demonstrate a clearly established constitutional right violated by the count three defendant's conduct as set forth on the summary judgment record. The plaintiff bears the burden of showing that a particular right was clearly established at the time of the alleged action by the defendants, and he failed to meet that burden here. The principal brief from the plaintiff cites only two cases in support of this burden. We're talking just retaliation. Just on the retaliation count, Your Honor. Correct. The plaintiff's principal brief only cites two cases in support of this clearly established burden. The first is Lewis v. Jacks. Namely, that the filing of a grievance is First Amendment protected activity. No one's arguing otherwise in this case. The district court correctly understood this. The second case cited by the plaintiff is Spruce v. Babcock. Spruce stands for an unremarkable proposition as well. No disciplinary action may be taken by a prison official against the prisoner for the filing of a grievance. Again, the district court was well aware of this and noted it in its summary judgment ruling, but stated, the plaintiff never alleged that a disciplinary action was taken against him on the summary judgment record for the filing of a grievance. And so Spruce does not advance the plaintiff's argument. Do you have a qualified immunity case on the chilling element of this retaliation claim? Your Honor, I don't. Burlington Northern v. White, I guess. Yes, Your Honor. I think the key takeaway regarding this position the plaintiff has that this is really a fact question. The takeaway here is the case is cited. This is Santiago v. Blair and Garcia v. City of Trenton. In the reply brief, those cases are cited solely to establish the court's ordinary firmness test. I'm assuming that you did some research on Burlington Northern v. White. What clearly established precedent is there on that element of the claim? What did you find? They don't cite anything. I go along with that. No, Your Honor. I know of no clearly established case law that indicates that any of the alleged conduct from the defendants. Well, Burlington Northern v. White itself is clearly established law. Yes, Your Honor. I don't believe that the plaintiff cited Burlington. Well, I think I may be wrong. That's my recollection of the element where this element originated. Is this Burton v. Livingston? I'm sorry. This is a different case? Yes, those are two different cases. One is called Burlington Northern and the other is called Burton. I apologize, Your Honor. Yes. Well, the broader point here is that under the qualified immunity analysis, the plaintiff must establish that there is a clearly established constitutional right that defendants have alleged to have been violated. And that's not established here. If there are no further questions, we would ask that this court affirm. Thank you. It's been a long day. You've got 15 seconds. Let's go. Being the last rebuttal, Your Honor, I'm only going to say one thing. I would ask that the court find that on the retaliation piece, this court has found that those claims in the second element typically go to a jury. And that's what I'd ask the court to find. Typically what? In the retaliation case, the second element represents the sort of question that is usually left to the judge and the jury. That's Garcia v. City of Trenton. I can't understand it. You're looking down and mumbling. I apologize, Your Honor. The second element of the retaliation claim, this court found in Garcia v. City of Trenton, that it represents the, quote, sort of question that is usually left to the judgment of the jury. And so we would ask that you remand this case back. Thank you, Your Honors. The case has been thoroughly briefed and argued. We'll take it under advisement. Does that complete the morning's argument, Ken? Yes, it does, Your Honor.